IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHNNY LEE WILSON,<br><br>        Plaintiff,<br><br>  v.<br><br>EVARISTO AGUINALDO, KENLYN GROZE, ROBERT CATTANEO and MICHAEL LEMKE<br><br>        Defendants. | Case No. 09 C 7487<br><br>Hon. Ruben Castillo |

**CONSOLIDATED RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS**

Plaintiff Johnny Lee Wilson ("Wilson"), through counsel, submits this response to the Motion to Dismiss the Amended Complaint (the "Complaint") filed by Defendant Evaristo Aguinaldo ("Dr. Aguinaldo") and the joint Motion to Dismiss filed by Defendants Kenlyn Groze ("Nurse Groze"), Robert Cattaneo ("CMT Cattaneo") and Michael Lemke ("Lt. Lemke") (moving parties collectively referred to as "Defendants"), and respectfully states as follows:

**SUMMARY OF ARGUMENT**

The arguments presented by the Defendants in their respective motions to dismiss are legally unsupported and should be rejected. Dr. Aguinaldo's suggestion that Wilson's claims are barred by the Prison Litigation Reform Act ("PLRA") because he failed to exhaust his administrative remedies ignores the fact that Wilson's lawsuit was filed *after* he was released from prison, thus rendering the PLRA irrelevant. *See Witzke v. Femal*, 376 F.3d 744, 750 (7th Cir. 2004). Dr. Aguinaldo's statute of limitations defense also fails because this § 1983 action was filed within two years of the date Wilson discovered

that he was permanently injured as a result of the Defendants' wrongful and illegal conduct. *See Cada v. Baxter Health Care Corp.*, 920 F.2d 446, 450 (7th Cir. 1990).

The motion to dismiss jointly presented by Nurse Groze, CMT Cattaneo and Lt. Lemke (collectively, the "Movants") should likewise be denied because the allegations in the Complaint, which must be taken as true for the purposes of this Rule 12(b)(6) motion, clearly state an actionable claim under the Eighth Amendment. Whether the Defendants ultimately acted with deliberate indifference to Wilson's health and safety (which they did) is a question of fact to be determined by a jury based upon the evidence presented by the parties. *See Farmer v. Brennan*, 511 U.S. 825, 843 (1994). The Movants' arguments challenging the substance of Wilson's allegations are premature under a Rule 12(b)(6) motion to dismiss and should be rejected by the Court.

## BACKGROUND FACTS

*CMT Cattaneo is Deliberately Indifferent to*
*Wilson's Serious and Painful Medical Condition*

Wilson is a former prisoner who was incarcerated at the Statesville Correctional Center ("Statesville") in Joliet, Illinois until his release in January 2009.[1] In early to mid-November 2007, the medical staff at Statesville prescribed an anti-depressant drug to Wilson to treat his depression, anxiety and stress.[2] At or about 7:35 a.m. on November 22, 2007, a few hours after taking his normal dosage of medication, Wilson complained to an unknown Statesville prison guard that he was suffering from an extremely painful and uncontrolled erection.[3] CMT Cattaneo, a Statesville correctional medical technician ("CMT"), examined Wilson's condition approximately one hour after it was reported to

---

[1] Complaint, ¶ 1.
[2] *See id.* at ¶ 8.
[3] *See id.* at ¶ 10.

prison officials and advised Wilson that he "looked alright." [4] CMT Cattaneo left Wilson in his cell without any medical treatment for at least another hour, after which time he transported Wilson to the prison's Health Care Unit ("HCU") in response to Wilson's continued complaints about his erection.[5] Cattaneo was aware of Wilson's serious medical condition, but did not personally provide Wilson with any medical treatment and failed to take steps to ensure that Wilson received proper medical treatment in a timely manner.

*Nurse Groze, Dr. Aguinaldo and Lt. Lemke*
*Willfully Refuse Wilson's Request for Medical Treatment*

Wilson reported his medical condition to Nurse Groze upon arriving at the HCU on November 22.[6] Nurse Groze, after reviewing Wilson's file, concluded that he was suffering from an uncontrolled erection because he had taken too many anti-depressant pills.[7] Wilson denied taking anything more than the prescribed amount of medication, but Nurse Groze accused him of lying and ordered that he be returned to his cell without any treatment, noting that she "didn't care what they did with him."[8] Later that same day, Wilson reported his medical condition to Lt. Lemke, a prison guard, who responded by merely laughing at Wilson.[9]

The following morning, Wilson reported his continuing painful erection to another prison guard.[10] Wilson was subsequently transported back to the HCU at or about 10:00 a.m. and was examined by Dr. Aguinaldo, a physician on staff at

---

[4] *See id*. at ¶ 11.
[5] *See id*. at ¶ 12.
[6] *See id*. at ¶ 13.
[7] *See id*.
[8] *Id*. at ¶ 14.
[9] *See id*. at 15.
[10] *See id*. at 16.

Statesville.[11] During Dr. Aguinaldo's examination of Wilson, Nurse Groze approached the doctor and advised him she had already reviewed Wilson's file and had previously determined that his erection was the result of taking too many anti-depressants.[12] Following his conversation with Nurse Groze, Dr. Aguinaldo informed Wilson that he was perfectly healthy, but instructed him not to take any further anti-depressant medication until the erection subsided.[13] Yet, Dr. Aguinaldo refused to take any steps to treat the erection and further refused to provide Wilson with any medication to alleviate the pain associated with his condition.[14] Instead, Dr. Aguinaldo ordered Wilson back to his cell and told him he could return to the HCU if the erection persisted for another forty-eight to seventy-two hours.[15]

After being returned to his cell, and having received no medical treatment for more than twenty-four hours after first reporting his medical condition to prison officials, Wilson again asked Lt. Lemke for help.[16] Nevertheless, like the day before, Lemke ignored Wilson's plea and simply laughed at him, suggesting that Wilson should "stop taking Viagra."[17]

*Wilson Suffers From Serious Medical Condition*

On the morning of November 24, 2007, Wilson reported his uncontrolled erection to an unidentified on-duty CMT at Statesville.[18] The CMT recognized that an uncontrolled erection lasting multiple hours constituted a medical emergency and had Wilson immediately transported to the emergency room at the University of Illinois

---

[11] *See id.* at 17.
[12] *See id.* at 18.
[13] *See id.* at 19.
[14] *See id.*
[15] *See id.*
[16] *See id.* at 20.
[17] *See id.* at 20.
[18] *See id.* at 21.

Medical Center ("UIC").[19] The UIC physicians diagnosed Wilson as suffering from an ischemic priapism and kept him hospitalized for four days, during which he underwent five separate surgeries to treat his erection.[20] Following the surgeries, Wilson's erection subsided and he experienced some erectile function.[21]

On or about May 6, 2008, approximately six months later, Wilson was transported from Statesville back to UIC because he was experiencing problems with his penile function and was having difficulty maintaining an erection.[22] The examining physician at UIC concluded that Wilson had suffered permanent tissue loss as a result of suffering from an untreated erection for more than forty-eight hours while imprisoned at Statesville.[23] It was during the May 6 examination that Wilson first learned that he had suffered a permanent injury due to the Defendants' failure to provide him with necessary and proper medical attention.[24]

## LEGAL ARGUMENT

### A. Legal Standard

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the Complaint, not the merits of the case. *See Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir.1990). Thus, in ruling on a Rule 12(b)(6) motion, the Court must accept all well-pled factual allegations as true and view all allegations in a light most favorable to the nonmoving party. *See Brown v. Budz*, 398 F. 3d 904, 907 (7th Cir. 2005). The factual allegations in the Complaint must be sufficient to raise the possibility of relief above the "speculative

---

[19] *See id.* at 22.
[20] *See id.* at 23-24.
[21] *See id.* at 25.
[22] *See id.* at 27.
[23] *See id.* at 28-29.
[24] *See id.*

level" by containing "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 (2007). However, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus,* 551 U.S. 89, 93 (2007). "A well pleaded complaint may proceed even if it appears 'that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *McGee v. Ramos*, 2010 WL 3937617, * 1 (N.D. Ill. Oct. 5, 2010) (*citing Twombly*, 550 U.S. at 556) (motion to dismiss § 1983 prisoner abuse claim denied where complaint was sufficient to put defendants on notice of allegations against them). As set forth below, the Complaint easily satisfies the foregoing standards.

> B. **The Administrative Exhaustion Requirement Contained in the Prison Litigation Reform Act is Inapplicable Because Wilson was Not Incarcerated at the Time He Initiated this Action**

Dr. Aguinaldo incorrectly argues that Wilson's lawsuit is barred under § 1997e of the Prison Litigation Reform Act ("PLRA")[25] because Wilson failed to file a formal grievance with Statesville officials within sixty days of the alleged §1983 violation and therefore did not exhaust his administrative remedies prior to filing this action. And while Dr. Aguinaldo correctly points out that under the PLRA "[n]o action shall be brought…under section 1983…by a *prisoner confined in any jail, prison, or other correctional facility* until such administrative remedies as are available are exhausted,"[26] this proposition is inapposite to the case at hand. In making his argument, Dr. Aguinaldo ignores the inescapable fact that Wilson is not subject to the PLRA because he was not a prisoner at the time this lawsuit was filed.

---

[25] 42 USCA § 1997e.
[26] Aguinaldo Motion to Dismiss, ¶ 10 (emphasis added).

Federal courts, including the Seventh Circuit Court of Appeals, have overwhelmingly concluded that "a plaintiff who seeks to bring suit about prison life after he has been released and is no longer a prisoner does not have to satisfy the PLRA's exhaustion requirements before bringing suit." *Norton v. The City of Marietta, OK*, 432 F.3d 1145 (10th Cir. 2005) (*citing Witzke v. Femal*, 376 F.3d 744, 750 (7th Cir. 2004)).[27] As set forth in the first paragraph of the Amended Complaint, Wilson was released from Statesville in January 2009, approximately eleven months *before* he filed the present lawsuit. Simply put, he was under no obligation to file a grievance with Statesville officials (or exhaust any other administrative remedies) prior to initiating this action. Accordingly, Dr. Aguinaldo's argument fails.

C. **The Present Lawsuit Was Timely Filed**

Like his administrative remedies defense, Dr. Aguinaldo's statute of limitations argument is unpersuasive. Under § 1983, federal courts look to state tort law to determine the applicable statute of limitations. *See Smith v. City of Chicago*, 951 F.2d 834, 839 (7th Cir. 1992).

> Generally, a claim accrues when all its elements have come into existence. The "discovery rule," which is read into state statutes of limitation in federal question cases, postpones the beginning of the limitations period of a federal claim from the date the party is injured to the date the party discovers or should have discovered the injury, exercising reasonable diligence.

*Cathedral of Joy Baptist Church v. Village of Hazel Crest*, 22 F. 3d 713, 717 (7th Cir. 1994); *see also Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990) ("It

---

[27] *See also Nerness v. Johnson*, 401 F.3d 874, 876 (8th Cir. 2005); *see also Cox. v. Mayer*, 332 F.3d 422, 424-25 (6th Cir. 2003); *see also Ahmed v. Dragovich*, 297 F.3d 201 210 (3d Cir. 2002); *see also Medina-Claudio v. Rodriguez-Mateo*, 292 F.3d 165, 167 (2d Cir. 1999); *see also Page v. Torrey*, 201 F.3d 1136, 1140 (9th Cir. 2000); *see also Greig v. Goord*, 169 F.3d 165, 167 (2d Cir. 1999).

is not the date on which the wrong that injures the plaintiff occurs, but the date - often the same, but sometimes later - on which the plaintiff discovers that he has been injured.").

The law is clear that the statute of limitations in the present matter began to run on May 6, 2008, the date Wilson first "discovered" that he had suffered a permanent physiological injury as a result of the Defendants' conduct. Wilson's cause of action did not accrue, as Dr. Aguinaldo suggests, in late November 2007 when the Defendants willfully deprived him of necessary medical care during his imprisonment. Rather, as clearly alleged the Amended Complaint, Wilson did not reasonably "discover" the nature and severity of his injury until he was medically diagnosed with a permanent injury more than six months later.[28] Moreover, Illinois law is clear that the statute of limitations for personal injury claims is two years after the cause of action accrued. 753 ILCS 5/13-202. The parties agree that the original Complaint is deemed to have been filed on December 1, 2009, well before the May 6, 2010 deadline. Accordingly, Wilson's action was timely filed as a matter of law. *See id*.

### D. Allegations in the Complaint are Sufficient to State an Actionable Claim Under Rule 12(b)(6)

Accepting the factual allegations in the Complaint as true, as the Court must do for the purposes of this Rule 12(b)(6) motion, there is no question that Wilson has stated a valid and actionable claim against Nurse Groze, CMT Cattaneo and Lt. Lemke (collectively the "Movants") for acting with deliberate indifference to his medical needs. The Movants' motion is deficient because it attacks Wilson's claims on the merits, rather than the manner in which the claims were pled. The Movants' arguments are premature at this stage of the litigation and must be rejected.

---

[28] Complaint, ¶¶ 23-24.

"It is well settled that prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when they display deliberate indifference to serious medical needs of prisoners." *McGee*, 2010 WL 3937617 at * 3 (prison officials' failure to treat plaintiff's serious medical condition constituted valid constitutional claim under § 1983). Seventh Circuit law is clear:

> [a] claim of deliberate indifference to a serious medical need contains both an objective and a subjective component. To satisfy the objective component, a prisoner must demonstrate that his medical condition is "objectively, sufficiently serious." A serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention. To satisfy the subjective component, a prisoner must demonstrate that prison officials acted with a "sufficiently culpable state of mind"…This is not to say that a prisoner must establish that officials intended or desired the harm that transpired. ***Instead, it is enough to show that the defendants knew of a substantial risk of harm to the inmate and disregarded the risk.*** Additionally, a "factfinder may conclude that that a prison official knew of a substantial risk from the very fact that the risk was obvious."

*Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (failure to adequately treat prisoner's vomiting and severe heartburn gave rise to valid § 1983 claim against prison physician and examining nurse) (*citing Farmer v. Brennan*, 511 U.S. 825 (1994) (emphasis added); *see also Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (denial of prisoner's reasonable request for medical treatment constitutes violation of Eight Amendment). An unreasonable delay in treating a medical condition, like a refusal to treat, is sufficient to support a deliberate-indifference claim. *See Rodriguez v Plymouth Ambulance Serv.*, 577 F.3d 816, 828-29 (7th Cir. 2002); *see also Gil v. Reed*, 381 F.3d 649, 662 (7th Cir. 2004). While deliberate-indifference claims are more commonly directed towards trained medical personnel, non-medical prison officials may also be held liable under § 1983

where it would be evident to a layperson that a prisoner is receiving inadequate or inappropriate treatment. *See Farmer*, 511 U.S. at 843.

Here, Movants acknowledge that Wilson's uncontrolled erection constituted a "serious medical condition"[29] and thus concede that the objective component of the deliberate-indifference analysis has been satisfied. *See McGee*, 2010 WL 3937617 at * 3. The sole issue for determination, therefore, is whether Wilson has properly pled the subjective component of such a claim. Even a cursory review of the Complaint shows that Wilson has satisfied the subjective prong, alleging numerous facts to show that Nurse Groze, CMT Cattaneo and Lt. Lemke were each aware of, but disregarded the substantial risk of harm his prolonged erection posed. *See id*.

As detailed in the Complaint, Wilson notified Nurse Groze and Lt. Lemke on multiple occasions that he was suffering from an extremely painful, uncontrolled erection for more than twenty-four hours, yet neither individual took any steps to ensure that he received proper medical attention despite the obvious seriousness of his condition. Nurse Groze, who accused Wilson of lying about the cause of his erection, knowingly ignored his pleas for help and ordered that he be returned to his cell without any treatment. Similarly, Lt. Lemke disregarded Wilson's repeated requests for treatment and instead cruelly joked bout Wilson's condition without providing *any* assistance. These allegations form the basis for a properly pled § 1983 claim for deliberate indifference to Wilson's medical needs. *See Jones v. Simek*, 193 F.3d 485, 490 (7th Cir. 1999) (evidence that prison officials knowingly failed to treat prisoner's painful medical condition constitutes deliberate indifference).

---

[29] Groze Motion to Dismiss, p. 5.

The allegations against CMT Cattaneo likewise satisfy the subjective component of the deliberate-indifference analysis because they establish that he consciously delayed allowing Wilson to receive medical treatment for several hours after being notified of his condition despite his active and/or constructive knowledge that a prolonged, uncontrolled erection could lead to serious and permanent injury. *See Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007) (recognizing that improper delay in treating painful and serious medical condition can support Eighth Amendment claim); *see also Gutierrez v. Peters,* 111 F.3d 1364, 1372 (7th Cir.1997) (same).

Finally, Movants' assertion that Wilson's deliberate indifference claims fail because their respective conduct was subjectively reasonable under the circumstances misses the mark. Whether their failure to treat ultimately violated Wilson's constitutional rights is a question of fact for the jury to determine and is *not* a proper issue to be determined on a Rule 12(b)(6) motion. *See Farmer*, 511 U.S. at 842. Not coincidentally, none of the cases relied upon by the Movants involves a motion to dismiss – which focuses on the sufficiency of the pleading itself. Rather, each case they cited involves a motion for summary judgment pursuant to which the court considered whether the record contained sufficient evidence to support the plaintiff's allegations. Thus, even to the extent the cited cases disposed of plaintiffs' § 1983 claims,[30] they are not helpful to the Movants in the context of this Rule 12(b)(6) motion and should be disregarded accordingly.

---

[30] *Farmer v. Brennan*, *Estelle v. Gamble* and *Greeno v. Daley*, each of which were heavily relied upon by the Movants, undermine the Movants' own position as the respective courts found that the plaintiff prisoners stated valid Eighth Amendment claims for deliberate indifference under §1983.

## CONCLUSION

For those reasons stated above, the motions to dismiss filed by the respective Defendants should be denied.

                                             JOHNNY LEE WILSON

                                             By:   /s/ *S. Jarret Raab*

Jeffrey L. Widman (#6226367)
S. Jarret Raab (#6294632)
SHAW GUSSIS FISHMAN GLANTZ
WOLFSON & TOWBIN LLC
321 N. Clark Street
Suite 800
Chicago, Illinois 60654
Telephone: (312) 541-0151

# CERTIFICATE OF SERVICE

S. Jarret Raab, an attorney, certifies that he caused to be served a true and correct copy of the foregoing CONSOLIDATED RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS upon counsel of record this 14th day of December, 2010 via ECF to:

- **Kevin R. Lovellette** klovellette@atg.state.il.us, mcapra@atg.state.il.us, lschertz@atg.state.il.us, kdonoghue@atg.state.il.us

- **Richard A. Tjepkema** r.tjepkema@yahoo.com, rtjepkema@cslaw-chicago.com

- **Christopher E Walter** cwalter@atg.state.il.us, mcapra@atg.state.il.us, kdonoghue@atg.state.il.us, vluera@atg.state.il.us

/s/ *S. Jarret Raab*