UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **JOHNNY LEE WILSON,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 09 C 7487** |
| **KENLYN GROZE, et al.,** | ) | **Judge Ruben Castillo** |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Johnny Lee Wilson filed this civil rights action against Dr. Evaristo Aguinaldo, Nurse Kenlyn Groze, Correctional Medical Technician (CMT) Robert Cattaneo, and Lieutenant Michael Lemke (collectively "Defendants"), under 42 U.S.C. § 1983, alleging violations of the Eighth Amendment. (R. 36, Am. Compl.) Presently before the Court are Defendants' motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (R. 37, Aguinaldo Mot.; R. 41, Lemke et al. Mot.) For the reasons stated below, Defendants' motions are granted.

## RELEVANT FACTS

Wilson was incarcerated at the Statesville Correctional Center in November 2007. (R. 36, First Am. Compl. ¶¶ 1, 8.) During Wilson's incarceration, Statesville employed Defendants. (*Id.* ¶¶ 2-5.)

In early to mid-November 2007, Statesville medical personnel prescribed Wilson an antidepressant drug, Trazodone, to treat his depression, anxiety, and stress. (*Id.* ¶ 8.) In the early evening of November 21, 2007, Wilson received his normal dosage of Trazodone. (*Id.* ¶ 9.) The next day, on November 22, 2007 at approximately 7:35 a.m., Wilson informed an unidentified prison guard that he was suffering from an uncontrolled erection and was in great physical pain.

(*Id.* ¶ 10.) Shortly thereafter, the unidentified prison guard reported Wilson's condition to the Statesville medical staff. (*Id.*)

Approximately one hour later, CMT Cattaneo arrived at Wilson's cell and, after discussing Wilson's medical condition with him, examined Wilson's erection. (*Id.* ¶ 11.) After examining the erection, CMT Cattaneo advised Wilson that he "looked alright," and left Wilson in his cell. (*Id.*) After about an hour, CMT Cattaneo returned to Wilson's cell to follow-up on Wilson's medical condition. (*Id.* ¶ 12.) Because Wilson's erection had not subsided and he remained in significant pain, CMT Catteaneo transferred Wilson to the prison's Health Care Unit. (*Id.*)

Upon arriving at the Health Care Unit, Wilson reported his condition to Nurse Groze. (*Id.* ¶ 13.) After evaluating Wilson's file, Nurse Groze concluded that Wilson was experiencing an uncontrolled erection because he took too many Trazodone pills. (*Id.*) After Wilson denied taking anything more than the prescribed amount of medication, Nurse Groze accused Wilson of lying and refused to provide him with medical treatment. (*Id.* ¶ 14.) As she walked away from Wilson, Nurse Groze told Wilson that she "didn't care what they did with him" and then instructed CMT Cattaneo to return Wilson to his cell. (*Id.*) After being returned to his cell without any medical treatment, Wilson reported his medical condition to Lieutenant Lemke, who responded by making fun of Wilson's erection. (*Id.* ¶ 15.)

On the morning of November 23, 2007, Wilson reported to another unidentified prison guard that he was still suffering from an uncontrolled erection that had not subsided over the preceding twenty-four hours. (*Id.* ¶ 16.) At approximately 10:00 a.m. that day, Wilson was taken back to the Health Care Unit. (*Id.* ¶ 17.) During this visit, Wilson was examined by Dr.

Aguinaldo. (*Id.*) While Dr. Aguinaldo was examining Wilson, Nurse Groze entered the examination room, advised Dr. Aguinaldo that she met with Wilson the previous day, and communicated her conclusion that his erection was caused by his antidepressant medication. (*Id.* ¶ 18.)

Dr. Aguinaldo informed Wilson that he was healthy, but instructed him not to take any additional antidepressant medication. (*Id.* ¶ 19.) Despite Wilson's pleas for help, Dr. Aguinaldo did not provide any pain medication and refused to initiate any medical treatment. (*Id.*) Instead, Dr. Aguinaldo sent Wilson back to his cell and told him that he could return to the Health Care Unit if the erection did not resolve itself within the next forty-eight to seventy-two hours. (*Id.*) Upon returning to his cell, Wilson again complained to Lieutenant Lemke. (*Id.* ¶ 20.) According to Wilson, Lieutenant Lemke simply laughed at Wilson and suggested that he stop taking Viagra. (*Id.*)

On the morning of November 24, 2007, approximately forty-eight hours after his erection started, Wilson reported his uncontrolled erection to an on-duty correctional medical technician. (*Id.* ¶ 21.) The technician had Wilson transported to the emergency room at the University of Illinois Medical Center ("UIMC"). (*Id.* ¶ 22.) After being examined, the UIMC medical staff diagnosed Wilson as suffering from ischemic priapism.[1] (*Id.* ¶ 23.) Due to the nature of his condition, Wilson was hospitalized for four days and underwent five surgeries to treat his

[1] "Priapism is a prolonged erection of the penis. The unwanted, persistent erection isn't caused by sexual stimulation or arousal, and priapism is usually painful." Mayo Clinic, http://www.mayoclinic.com/health/ priapism/DS00873 (last visited July 26, 2011). "Ischemic priapism—the result of blood not being able to exit the penis—is an emergency situation that requires immediate treatment. The treatment usually begins with a combination of draining blood from the penis and using medications." Mayo Clinic, http://www.mayoclinic.com/health/priapism/DS00873/DSECTION=treatments-and-drugs (last visited July 26, 2011).

erection. (*Id.* ¶ 24.) Wilson was released from UIMC on November 28, 2007. (*Id.* ¶ 26.)

Over the course of the next several months, Wilson began experiencing worsening lower urinary tract symptoms and had trouble maintaining an erection. (*Id.* ¶ 27.) On May 6, 2008, Wilson was transported from Statesville to UIMC to be examined by medical personnel. (*Id.* ¶ 28.) During his medical examination, a UIMC physician discovered that Wilson had suffered significant and permanent penile tissue loss "as a direct and proximate result of failing to receive any medical treatment for more than forty-eight (48) hours after the initial onset of his uncontrolled erection." (*Id.*) It was not until this examination that Wilson learned that he suffered from permanent impotence due to his previously untreated erection. (*Id.* ¶ 29.) Approximately seven months later, in January 2009, Wilson was released from Statesville. (*Id.* ¶ 1.)

## PROCEDURAL HISTORY

On December 1, 2009, the circuit clerk received the suit, which was subsequently filed on January 13, 2010. (R. 1, Received Compl.; R. 7, Compl.) After obtaining counsel, Wilson amended his complaint on October 28, 2010. (R. 36, Am. Compl.) In his amended complaint (the "complaint"), Wilson presents four claims. In Counts I through III, Wilson alleges that Dr. Aguinaldo, Nurse Groze, and CMT Cattaneo violated his Eighth Amendment rights by "wrongfully and purposefully with[holding] necessary medical treatment from [him] and show[ing] deliberate indifference to [his] serious medical needs despite [their] knowledge that [he] was at substantial risk of harm." (*Id.* ¶¶ 31, 36, 41.) In Count IV, Wilson avers that Lieutenant Lemke also violated his Eighth Amendment rights because Lieutenant Lemke "had actual knowledge that Wilson was receiving inadequate and inappropriate medical treatment

from the Statesville medical staff and therefore showed deliberate indifference to Wilson's medical needs despite his knowledge that Wilson was at substantial risk of harm." (*Id.* ¶ 46.)

On November 12, 2010, Dr. Aguinaldo filed a motion to dismiss. (R. 37, Aguinaldo Mot.) In his motion, Dr. Aguinaldo presents two arguments. First, he contends that the applicable statute of limitations bars Wilson's claims. (*Id.* ¶¶ 1-8.) Second, Dr. Aguinaldo argues that because Wilson failed to exhaust his administrative remedies, his action is barred. (*Id.* ¶¶ 9-19.)

Six days later, on November 18, 2010, Lieutenant Lemke, Nurse Groze, and CMT Cattaneo filed a motion to dismiss. (R. 41, Lemke et al. Mot.) They contend that Wilson's claims fail because they were not deliberately indifferent to Wilson's medical needs. (R. 42, Lemke et al. Mem. at 1-8.)

## LEGAL STANDARD

A motion under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7,* 570 F.3d 811, 820 (7th Cir. 2009). To survive a motion to dismiss for failure to state a claim, the complaint must overcome "two easy-to-clear hurdles": (1) "the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which it rests"; and (2) "its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level [.]'" *Tamayo v. Blagojevich,* 526 F.3d 1074, 1084 (7th Cir. 2008). "Plausibility" in this context does not imply that a court "should decide whose version to believe, or which version is more likely than not." *Swanson v. Citibank, N.A.,* 514 F.3d 400, 404 (7th Cir. 2010). Rather, to survive a motion to

dismiss under Rule 12(b)(6), the "plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *Id.* In other words, "the court will ask itself could these things have happened, not *did* they happen." *Id.*

## ANALYSIS

Dr. Aguinaldo argues that Wilson's claims should be dismissed because they are barred by the applicable statute of limitations. (R. 37, Aguinaldo Mot. ¶¶ 1-8.) Prior to considering this contention, the Court notes that is "'irregular' to dismiss a claim as untimely under [Rule 12(b)(6)]." *Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006) (citing *United States v. N. Trust Co.*, 372 F.3d 886, 888 (7th Cir. 2004). Under Rule 8, a complaint need not anticipate or overcome affirmative defenses such as the statute of limitations. *Id.* "As a result, a federal complaint does not fail to state a claim simply because it omits facts that would defeat a statute of limitations defense." *Id.* In some instances, however, "dismissal under Rule 12(b)(6) on the basis of a limitations defense may be appropriate when the plaintiff effectively pleads herself out of court by alleging facts that are sufficient to establish the defense." *Id.* Unfortunately for Wilson, the Court concludes that he has effectively pleaded himself out of court by alleging facts that are sufficient to establish a statute of limitations defense.

Section 1983 provides a federal cause of action, but in several respects federal law looks to the law of the state in which the cause of action arose. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). "This is so for the length of the statute of limitations: It is that which the State provides for personal-injury torts." *Id.*; *Kelly v. City of Chi.*, 4 F.3d 509, 511 (7th Cir. 1993) ("Courts look to the personal injury laws of the state where the injury occurred to determine the statute of limitations in a section 1983 case."). Because Wilson's cause of action arose in this state,

Illinois' two-year statute of limitations applies. *See* 735 Ill. Comp. Stat. 5/13-202.

Prior to applying a statute of limitations, a court must first determine when a plaintiff's injury accrued, or, stated differently, when the statute of limitations begins to run. *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1991). While state law governs the statute of limitations, the accrual date of a Section 1983 cause of action is a question of federal law that is not resolved by reference to state law. *Wallace*, 549 U.S. at 388. Aspects of Section 1983 which are not governed by reference to state law are governed by federal rules conforming in general to common-law tort principles. *Id.* Under those principles, it is the standard rule that accrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief. *Id.* (internal quotation marks and citations omitted).

Here, there is a dispute as to when Wilson's injury accrued. According to Wilson, his injury accrued on "May 6, 2008, the date [he] first 'discovered' that he had suffered a permanent physiological injury as a result of Defendants' conduct." (R. 45, Wilson's Mem. at 7-8.) Dr. Aguinaldo, on the other hand, argues that Wilson's injury accrued on November 24, 2007, the date on which "he was transported to the emergency room and received 5 surgeries for his erection." (R. 48, Aguinaldo's Reply.) Neither assertion, the Court concludes, properly frames the constitutional injury in this case.

The Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal citation omitted). To state a cognizable Eighth Amendment claim, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. A deliberate

indifference claim includes both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To prevail, a prisoner must first show that his medical condition is "objectively, sufficiently serious," *id.*, which, in this context, means that the medical condition "has been diagnosed by a physician" or "is so obvious that even a lay person would perceive the need for a doctor's attention," *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Second, the prisoner must show that the officials knew of and disregarded "an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837.

In cases alleging the denial of medical treatment, the Seventh Circuit has stated that "[e]very day that [a defendant] prolonged [a prisoner's] agony by not treating his painful condition marked a fresh infliction of punishment that caused the statute of limitations to start running anew." *Heard v. Sheahan*, 253 F.3d 316, 318-20 (7th Cir. 2001). As *Heard* suggests, an Eighth Amendment violation arising out of a defendant's deliberate indifference to a prisoner's serious medical needs is a continuing violation, and thus can accrue for as long as a defendant knows about a prisoner's serious medical condition, has the power to provide treatment, and yet withholds treatment. *Id.* at 318; *Jervis v. Mitcheff*, No. 06-4236, 2007 WL 4355433, at *2 (7th Cir. Nov. 13, 2007) ("Deliberate indifference to a serious medical need is a continuing violation that accrues when the defendant has notice of the untreated condition and ends only when treatment is provided or the inmate is released.")

In this case, the alleged Eighth Amendment injury Wilson suffered is clear: the denial of medical treatment for Wilson's uncontrolled erection. *See Estelle*, 429 U.S. at 106. Given this framing of Wilson's constitutional injury, it is evident that his Eighth Amendment claims against Defendants started to accrue on November 22 and stopped accruing on November 24. On

November 22, Wilson possessed a complete and present cause of action against Defendants. Specifically, he could have stated a cognizable Eighth Amendment claim by alleging that Defendants failed to provide him with medical treatment for a serious medical need, namely, his uncontrolled erection. As evident by his active pursuit of medical treatment from Defendants over the course of approximately two days, Wilson himself (not to mention the unidentified prison guard who reported Wilson's condition to the Statesville medical staff) recognized the seriousness of his uncontrolled erection on November 22, 2007. (*See* R. 36, Am. Compl. ¶¶ 8-24.) This alleged Eighth Amendment injury continued accruing until November 24, 2007, the date on which Wilson obtained medical treatment for his uncontrolled erection.

A later accrual date for the constitutional claims against Defendants does not find support in the complaint's allegations. According to the complaint, November 24, 2007 is the last date Defendants could have denied Wilson medical treatment for his uncontrolled erection. (*Id.*) On this date, Wilson began receiving the medical treatment he was seeking at UIMC. (*Id.* ¶¶ 21-26.) Considering that he was already receiving treatment for his uncontrolled erection by November 24, 2007, Defendants could not have been deliberately indifferent to his serious medical needs after this date. Stated differently, because treatment was already being provided on November 24, Defendants could not have been violating his Eighth Amendment rights by denying him treatment. *See Jervis*, 2007 WL 4355433, at *2 (noting that deliberate indifference to a serious medical need is a continuing violation that ends only when treatment is provided or the inmate is released). Since the continuing violation ended once Wilson received medical treatment at UIMC, his Eighth Amendment claims stopped accruing on November 24, 2007.

Given this conclusion, the Court finds that Wilson's Eighth Amendment claims are time-

barred. Illinois' two-year statute of limitations gave Wilson until November 24, 2009 to file his suit. Since his complaint was not received by the circuit clerk until December 1, 2009, it falls just outside the two-year window, and thus fails as a matter of law.

To avert this conclusion, Wilson, as stated earlier, argues that the statute of limitations for his claims "began to run on May 6, 2008, the date [he] first 'discovered' that he had suffered a permanent physiological injury as a result of Defendants' conduct." (R. 45, Wilson's Mem. at 8.) Because he did not "reasonably 'discover' the nature and severity of his injury until he was medically diagnosed with a permanent injury six months later," Wilson asserts that his claim did not accrue until May 6, 2008. (*Id.*) This contention, the Court concludes, is unpersuasive for two reasons.

First, contrary to the parties' representations, the discovery rule does not apply in this case. Generally, a claim accrues when all its elements have come into existence. *Cathedral of Joy Baptist Church v. Vill. of Hazel Crest*, 22 F.3d 713, 717 (7th Cir. 1994). The accrual date "is not the date on which the wrong that injures the plaintiff occurs, but the date–often the same, but sometimes later on–on which plaintiff discovers that he has been injured." *Cada*, 920 F.2d at 450. The discovery rule, "which is read into state statutes of limitations in federal question cases, postpones the beginning of the limitations period of a federal claim from the date the party is injured to the date when the party discovers or should have discovered the injury, exercising reasonable diligence." *Cathedral*, 22 F.3d at 717 (citations omitted). The discovery rule is an exception to the general application of a statute of limitations period, *id.,* and applies where there is a temporal gap between when a plaintiff suffered an injury and when he discovers that he has been injured. *See Cada*, 920 F.2d at 450.

Because the date on which Wilson was injured is the same date he discovered he had been injured, Wilson's alleged injury does not require application of the discovery rule. To be clear, Wilson's injury is not the permanent penile damage that he unfortunately suffered. Instead, his claim is brought under the Eighth Amendment, which protects him against a prison official's "deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 104. It is the denial of treatment for his serious medical need, and not the unfortunate physical consequences of that failure, that is the basis of the underlying alleged constitutional violation. *See Heard*, 253 F.3d at 318 (noting that it is the refusal to treat a serious medical condition that constitutes the cruel and unusual punishment that is prohibited by the Eighth Amendment); *Laureano v. Goord*, No. 06-7845, 2007 WL 2826649, at *3 (S.D.N.Y. Aug. 31, 2007) (noting that although defendants' indifference may have led to a prisoner's suicide, "the proper focus in on the time of the *discriminatory* act, not he point at which the *consequences* of the act became painful," and thus finding that the prisoner's death is not the proper accrual date). Since Wilson was aware of his injury the same day he was injured, there is no need to apply the discovery rule. Wilson's argument for its application is therefore unavailing.

Second, the nature and severity of his physical injury is irrelevant in determining when Wilson's Eighth Amendment claim accrued. The Seventh Circuit has stated, "[t]he statute of limitations begins to run upon the discovery of the injury, even if the full extent of the injury is not discovered until much later." *Goodhand v. United States*, 40 F.3d 209, 212 (7th Cir. 1994). While this rule has an important exception for situations where an initially trivial injury develops into something more serious, *id.*, the Court finds that this exception does not apply in this case because the alleged denial of medical care for Wilson's uncontrolled erection is far from trivial.

The Court also notes that even if the discovery rule did apply in this case, it "does not suspend the accrual of a claim until the plaintiff experiences the entirety of consequences resulting from an injury, but only until the plaintiff has knowledge of an allegedly unlawful action." *Brademas v. Ind. Hous. Fin. Auth.*, 354 F.3d 681, 686 (7th Cir. 2004). Here, Wilson obtained knowledge of Defendants' allegedly unlawful denial of medical care on November 22, 2007, and he remained aware of this denial until it ended on November 24, 2007, the date on which he received medical treatment. Thus, any attempt by Wilson to push the accrual date of his Eighth Amendment claims beyond November 24, 2007 fails.

## CONCLUSION

The Court does not arrive at its conclusion lightly. Given the Court's conclusion, Wilson will not have an opportunity to prove that he has indeed suffered a violation of his constitutional rights. While giving litigants an opportunity to vindicate their constitutional rights is an important value in our system of justice, in certain situations other societal values take precedence. This is one such situation.

Statute of limitations are designed "to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Order of R.R. Telegraphers v. Ry. Express Agency*, 321 U.S. 342, 348-49 (1944). "Statutes of limitations are not arbitrary obstacles to the vindication of just claims, and therefore they should not be given a grudging application. They protect important social interests in certainty, accuracy, and repose." *Cada*, 920 F.2d at 452-53. The application of the statute of limitations requires the Court to GRANT Dr. Aguinaldo's motion to dismiss (R. 37). Because the claims against the remaining defendants are also time-barred, their motion to dismiss

(R. 41) is also GRANTED. Wilson's complaint is therefore dismissed. The Clerk of the Court is directed to enter judgment for the defendants.

**Entered:** ______________________
**Judge Rubén Castillo**
**United States District Court**

**Dated:** August 1, 2011